<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAVIGATORS SPECIALITY INSURANCE, *Plaintiff*, v. PHARMANET DEVELOPMENT GROUP, INC., et. al, *Defendants*. | Civil Action No.: 15-cv-6285 (PGS)(DEA) <br><br> **MEMORANDUM <br> AND <br> ORDER** |

**SHERIDAN, District Judge**

In this action, Navigators Specialty Insurance ("Navigators") seeks a ruling that it no longer has to defend or indemnify Pharmanet Development Group, Inc. and its affiliate or successor inVentiv Health Clinic, LLC (collectively, "PharmaNet") in the underlying state court action ("Underlying Action"). PharmaNet makes a cross-motion for partial summary judgment on the issue that Navigators has a duty to defend. In the Underlying Action, CEL-SCI filed a Statement of Claim (SOC) and an Amended Statement of Claim (ASOC) against PharmaNet.

**Facts and Procedural History:**

CEL-SCI hired PharmaNet as a Contract Research Organization ("CRO") to manage, implement and complete its global Phase III drug trial to qualify its cancer treatment, Multikene, for approval by the FDA. In the Underlying Action, CEL-SCI sought over $50 million in damages. (ASOC ¶ 15). CEL-SCI alleged that PharmaNet "breached the MSA and IPA through

reckless mismanagement of the Phase III Trial" by "(i) failing to ensure site selection and patient enrollment milestones were met; (ii) proposing, vetting, and contracting with unqualified study sites; (iii) assigning inexperienced managerial personnel that were not dedicated solely to the Phase III trial; (iv) insufficiently training study site personnel; and (v) recklessly abandoning its contractual obligations, professional standards of care, GCP [Good Clinical Practices], and FDA regulations in managing, supervising, and monitoring the Phase III Trial." (ASOC ¶ 416). Furthermore, CEL-SCI claimed that Pharmanet did not keep accurate medical records; failed to keep information confidential; and failed to "meet any standard of expert care"; injected Multikene in the wrong dosage into patients, in the wrong location, and to the wrong patients; failed to perform required biopsies; backdated records; failed to report patient deaths; and that its conduct "fell below any acceptable standard of care and professionalism." (ASOC ¶¶ 14-16).

This action mainly concerns the Navigators policy exclusion in Section III(C)(5) that excludes any claim:

> Based on or arising out of delay in delivery of or failure to complete your product or your work.

(Compl. at ¶ 34, Ex. D at PageID 288).

On or about October 30, 2013, CEL-SCI brought the underlying arbitration through a Statement of Claim against PharmaNet alleging breach of contract, fraud in the inducement and common law fraud related to PharmaNet's work during the trials. (Compl. ¶ 11, Ex. A). Navigators states that PharmaNet did not put it on notice of these proceedings until February of 2015, about a year and a half later. (Compl. ¶ 36). PharmaNet first put Navigators on notice on February 6, 2015 when it learned that CEL-SCI sought to amend its Statement of Claim to bring a separate count for "professional negligence." (Compl ¶ 37).

2

Navigators reserved its rights and consented to participate in PharmaNet's defense based on the professional malpractice claim, as long as PharmaNet covered its deductible of $100,000, which it did. (Compl. ¶ 38). On June 29, 2015, the arbitrator ultimately dismissed the professional malpractice claim holding that it was duplicative of the breach of contract claim under the economic loss doctrine. (Compl. ¶¶ 25-26). Pharmanet claims that thirteen minutes after PharmaNet paid the $100,000 deductible, Navigators denied coverage on July 24, 2015. (Ex. G).

**Legal Standard**:

A party may make a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). The standard for a decision pursuant to Rule 12(c) is nearly identical to that for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991).

On a motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S.

at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001).

  Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

  Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48.

**Analysis**:

I.      The parties agree that New Jersey law controls in this case. New Jersey law holds that "the interpretation of an insurance contract is a question of law for the court to determine, and can be resolved on summary judgment." *Adron, Inc. v. Home Ins. Co.*, 292 N.J. Super. 463, 473 (App. Div. 1996). The insurance policy should be given its plain, ordinary, meaning, and the court should not attempt to rewrite the insurance policy. *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001).

"Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy." *Voorhees v. Preferred Mut. Ins. Co*, 128 N.J. 165, 173 (1992). The burden is on the insured to show that their claim falls under the insurance policy, but the burden is on the insurer to show that that an exclusion applies. *S.T. Engineers Inc. v. Pennsylvania Nat. Mut. Cas. Co.*, 388 N.J. Super. 592, 603 (App. Div. 2006). The exclusions in a policy "are presumptively valid and will be given effect if specific, plain, clear, prominent, and not contrary to public policy." *Princeton Ins. Co v. Chunmuang*, 151 N.J. 80, 95 (1997) (internal quotations omitted). When the complaint is ambiguous, doubts should be decided in favor of coverage; and, "[w]hen multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated." *Voorhees*, 128 N.J. at 173-174. It is "the nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer, [that] determines whether the insurer is obliged to defend." *Hofing v. CNA Ins. Companies*, 247 N.J. Super. 82, 88 (App. Div. 1991). If the policy language "fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage." *President v. Jenkins*, 180 N.J. 550, 563 (2004).

Plaintiff argues that CEL-SCI's claims fit within the exclusion of the policy because they are based on PharmaNet's delays and failure to complete the trial. Navigators concedes that, but for the exclusion, the claim could be included under the policy as a "professional liability claim" for a "wrongful act." According to Navigators, PharmaNet's failings created delays and setbacks in the study, ultimately causing CEL-SCI to find a new entity to "rescue and complete" the trial. It is irrelevant, according to Navigators, that failure to complete the task may have resulted from negligence, because ultimately the damages stem from delay, and the nature of the damages determines whether there is an obligation to defend. See *L.C.S., Inc. v. Lexington Ins. Co*, 371 N.J. Super. 482, 491 (App. Div. 2004). Navigators cites to a number of passages from the ASOC that emphasize delay; for example:

> 416. As set forth below, PharmaNet repeatedly breached the MSA and the IPA through its reckless mismanagement of the Phase III Trial including the following: (i) failing to ensure site selection and patient enrollment milestones were met; (ii) proposing, vetting, and contracting with unqualified study sites; (iii) assigning inexperienced managerial personnel that were not dedicated solely to the Phase III Trial; (iv) insufficiently training study site personnel; and (v) recklessly abandoning its contractual obligations, professional standards of care, GCP, and FDA regulations in managing, supervising, and monitoring the Phase III Trial. **PharmaNet's material failure to comply with its obligations under the MSA and the IPA, and failure to prevent and correct the myriad of avoidable GCP violations, were the direct cause of the continuous delays and failures that metastasized** during PharmaNet's tenure as CRO for the Phase III Trial and as a result left CEL-SCI with only a small fraction of the target patient enrollment three years after it retained PharmaNet. **PharmaNet's repeated breaches necessitated that CEL-SCI terminate the MSA and IPA and hire two CROs to rescue the Phase III Trial.**

(ASOC, Ex. B at ¶ 416 (emphasis added). Navigant cites to numerous other passages in the ASOC containing similar language about delay. (See ASOC, Ex. B., ¶¶173-75; ¶¶ 292-298; ¶ 434; ¶ 446, ¶ 451; ¶ 455-457; ¶ 470-471; ¶ 485).

Defendants counter that exclusions should be interpreted narrowly, any ambiguity should be decided in their favor, and if any allegation in the ASOC is not covered by the exclusion,

6

there must be a duty to defend. Defendants explain that there are numerous allegations in the ASOC other than delay, including failure to choose and oversee study sites, failure to properly train personnel, failure to administer the drug appropriately to the right patients, failure to maintain records properly, and that PharmaNet essentially delivered a "fundamentally flawed work product." (Ex. A, at ¶¶ 11-16).

Defendants cite to *Aptuit, LLC v. Columbia Cas. Co.*, 2014 WL 1901157 (N.Y. Sup. Ct. 2014), where the insurance policy had an essentially identical exclusion. The company that was tasked with handling the drug trials reported false results. The New York court decided that the insurer still had a duty to defend and that the "Delay Exclusion is ambiguous on its face as to whether it would bar coverage." *Id.* Plaintiff contends that the case is distinguishable because in that case the insured had, in fact, provided results, even though they were false, whereas here, the project was not completed under PharmaNet's supervision.

Plaintiff cites to a case from this Court. In that case, plaintiff sustained injuries from a dog attack, and the insurance policy exclusion denied coverage for "bodily injury, property damage, or medical payment to others, caused by any animal, whether owned or not owned by an insured." *Stafford v. Scottsdale Ins. Co.*, 2010 WL 23323, at *1 (D.N.J. 2010) (internal quotations omitted). The plaintiff in *Stafford* argued that the exclusion did not apply because the injury was caused by the owners' negligent failure to build a fence around their home, and not caused by the dog. This Court held that the "negligent care of the dog cannot be isolated from the ownership and attack by the dog." *Stafford*, 2010 WL 23323, at *3. Similarly, according to Plaintiff, PharmaNet's professional negligence cannot be separated from the delays.

However, it is still not clear that delays are directly tied to the damages in each claim. For example, one of the passages from the ASOC cited by Navigators stated that the damages "were

7

the direct cause of the continuous delays and failures that metastasized." (ASOC, Ex. B at ¶ 416). Even this passage speaks of "delays" and "failures." There were many "failures," such as incorrectly administering the drug, poorly overseeing study sites, and essentially incompetently performing the job. Since exclusions in insurance policies must be "narrowly construed" with all "doubts…resolved in favor of the insured," *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997), and "[w]hen multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated," *Voorhees*, 128 N.J. at 173-174, the Court will grant summary judgment in favor of PharmaNet on the duty to defend.

**II.**   Navigators also argues that it has no duty to defend or indemnify PharmaNet for its alleged fraudulent inducement claim because it is outside the scope of the policy. However, the duty to defend exists if one of several causes of action may be covered. *See Voorhees*, 128 N.J. at 174. Therefore, the Court will not rule on whether the fraud in the inducement claim is excluded by the policy, because it has already been determined that there are potentially defendable claims.

Navigators also asserts that a property damage exclusion applies to some of the claims. But, once again, the Court will not rule on this point since the duty to defend already attaches.

**III.**   In supplemental briefing, Navigators argues that the recently decided New Jersey Supreme Court case, *Templo Fuente De Vida Corp. v. National Union Fire Insurance Company of Pittsburgh*, 224 N.J. 189 (2016), impacts this case. *Templo* held that because sophisticated parties agreed to a contract and it was not a contract of adhesion, the insurance company did not have to show that it "suffered prejudice before disclaiming coverage on the basis of the insured's

failure to give timely notice of the claim," and six months was not sufficient timely notice. 224 N.J. at 193. The policy in that case stated that the Company must:

> give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either: (1) anytime during the Policy Period or during the Discovery Period (if applicable); or (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such claim is reported no later than 30 days after the date such Claim was first made against an Insured.

224 N.J. at 194.

Similarly, Navigators claims that this insurance agreement was negotiated by sophisticated parties, and PharmaNet first notified Navigators of the claim about a year and a half after CEL-SCI submitted the original statement of claim. Navigators' policy originally covered the period from November 30, 2010 to April 1, 2012, and on May 31, 2012 it was amended to extend the reporting period from May 30, 2012 to May 30, 2017 for claims arising out of occurrences during the policy period. Compl. ¶¶ 28-29. The policy here states:

> If there is a claim, you must do the following:
>
> 1.      promptly notify the Company in writing
>
> The notice must be given to the Company within the policy period or within 60 days after its expiration or termination.

Policy, Ex. D., at 16. The policy in *Templo* said, "as long as such claim is reported no later than 30 days after the date such Claim was first made against an Insured." There is no such provision here. PharmaNet first put Navigators on notice of the claim on February 20, 2015. Therefore, the Court determines that PharmaNet still notified Navigators within the policy's timeframe, and the *Templo* case is distinguishable.

## ORDER

This matter having come before the Court on a Motion for Judgment on the Pleadings by Plaintiff Navigators Specialty Insurance Company ("Navigators") (ECF No. 14), and on the Cross-Motion for Partial Summary Judgment by Defendants PharmaNet Development Group, Inc., et al. ("PharmaNet") (ECF No. 17); and the Court having considered the submissions of the parties, including the supplemental briefings, having heard oral argument, for the reasons set forth on the record, and for good cause shown,

WHEREAS, PharmaNet's Cross-Motion was not properly filed as a formal motion but was indicated as one in PharmaNet's opposition brief, and the Court will treat it as a motion;

On this __29__ day of March, 2016, it is hereby

**ORDERED** that the Motion for Judgment on the Pleadings on Navigators' duty to defend and indemnify PharmaNet in the underlying arbitration (ECF No. 14) is **DENIED**; it is further

**ORDERED** that the Motion for Partial Summary Judgment on Navigators' duty to defend PharmaNet in the underlying arbitration (ECF No. 17) is **GRANTED**.

_____
PETER G. SHERIDAN, U.S.D.J.